## REED *vs.* WOODMAN.

If a creditor, having demands accruing partly before and partly after a convey-
ance by his debtor, which he would impeach on the ground of · fraud, blends
them all in one suit, and having recovered judgment, extends his execution on
the land ; he can come in only in the character of a subsequent creditor.

If a creditor, to secure his debt, takes from his debtor an absolute conveyance of
land, giving his parol promise to reconvey on payment of his debt ; this is not
void against other creditors, without proof of actual fraud.

And if the debtor, in such case, having paid the debts, instead of taking the recon-
veyance directly to himself, procures the deed to be given to a third person,
between whom and himself there was a corrupt intent to deceive and defraud
his creditors ; yet a subsequent creditor cannot impeach this conveyance, no
estate having passed back to the debtor.

IN this case, which was a writ of entry, tried before *Preble J.*
the title of the demandant was under the extent of an execution
in his favor, against one *Aaron Woodman*, made *Nov.* 13, 1824.
His debt was for professional services rendered, and monies
expended, in the management of a suit in the courts of Massa-
chusetts, commencing in *August* 1821, and ending at the termina-
tion of the suit in *October* 1822. The demandant attached the
premises *Jan.* 9, 1824, and extended his execution within thirty
days after judgment.

The tenant, who was a brother of *Aaron Woodman*, claimed
title under a warranty deed made by *Aaron Woodman* to *William*
and *Edward Oxnard*, dated *Feb.* 1, 1822 ;—and a quitclaim deed
from the *Oxnards* to *David Burbank*, dated *Aug.* 8, 1823 ;—and
a quitclaim deed from *Burbank* to the tenant, dated *Jan.* 2, 1824,
but not recorded till a year after the demandant's attachment.

The demandant then read the deposition of *William Oxnard*,
who testified that at the time of making the deed to him and *Ed-
ward Oxnard*, said *Aaron Woodman* was indebted to them in
about 450 dollars, and to him alone in about a hundred dollars
more; as collateral security for which sums, the deed was given;
on payment of which the land was to be reconveyed to said *Aaron*;
—that afterwards, the debts being otherwise satisfactorily secur-

ed, they, at the request of *Aaron Woodman*, conveyed the land to *Burbank*, taking his negotiable note for 400 dollars, payable to themselves in six years without interest; which they transferred to said *Aaron*, without recourse to the indorser ;—and that their promise to reconvey the property on payment of their debt was merely verbal.

The demandant also read the deposition of *Burbank*, who testified that the conveyance to himself was made at the request of *Aaron Woodman*, for the sole purpose of secreting the property from his creditors, and was wholly collusive ; and that his own deed to *Ephraim Woodman*, the tenant, was also made at *Aaron's* request, and for his benefit, *Burbank* refusing to hold the title any longer.

The tenant proved that the land was worth about four hundred dollars ; and that *Aaron Woodman*, at the time of the convey-ance to the *Oxnards*, was solvent, though embarrassed, and his credit somewhat impaired ; and that he continued solvent till *June* 1823, when he failed.

Upon this evidence the demandant's counsel contended—1st, that the proof of a secret trust or agreement between *Aaron Woodman* and the *Oxnards*, for the reconveyance of the property, it being inconsistent with the face of the deed, was conclusive evidence of legal fraud ; the conveyance being of real estate.

2. That if it was not conclusive, and if the conveyance to the *Oxnards* was to be treated as a conveyance merely voluntary ; yet it was not valid against the demandant, who was a prior creditor, his debt having accrued under a contract made and partly executed, before the date of that deed.

3. That if the demandant stood on the ground of a subsequent creditor, as it respected the conveyance to the *Oxnards*, and if that conveyance was good in law ; yet that if the conveyance from them to *Burbank* was fraudulent and void, the demandant had a legal right to attach and hold the land, as the estate of *Aaron Woodman*, while the apparent title stood in the name of *Burbank*.

But the judge instructed the jury that the proof of a secret agreement between *Aaron Woodman* and the *Oxnards*, for the

reconveyance of the estate, though it was strong evidence of fraud, yet was not conclusive ;—that the demandant by blending in one suit his charges for monies expended and services performed after, as well as before, the conveyance to the *Oxnards*, could come in only in the character of a subsequent creditor ;—and that, therefore, if they were satisfied that there was no actual fraud in the conveyance to the *Oxnards*, they ought to find for the tenant ; the demandant not being at liberty, in that case, to avail himself of any fraud in the conveyance to *Burbank*, or in that from him to the tenant.

These points, however, he reserved for the consideration of the court, a verdict having been returned for the tenant.

*Greenleaf* and *J. Shepley*, for the demandant, contended that the testimony of *Oxnard* amounted to conclusive proof of legal fraud, so far as to render his deed void against the creditors of *Woodman* ; and that this should have been so ruled by the judge, and not have been left to the jury ; the facts thus testified not having been controverted by the tenant. *Sturtevant v. Ballard* 9 *Johns.* 337. *Flint v. Sheldon* 13 *Mass.* 443. *Smith v. Lane* 3 *Pick.* 205. It was proof of a secret trust in the conveyance of land, inconsistent with the face of the deed, which ought always to exhibit every thing relating to the title. *New Eng. Ins. Co. v. Chandler* 16 *Mass.* 279. *Doe v. Rutledge Cowp.* 712. *Fitzer v. Fitzer* 2 *Atk.* 50. *Sexton v. Wheaton* 8 *Wheat.* 246. *Northampton Bank v. Whiting* 12 *Mass.* 110. *Gorham v. Herrick* 2 *Greenl.* 87. *Hills v. Elliot* 12 *Mass.* 31. *Harris v. Sumner* 2 *Pick.* 136. If a conveyance, with a power of revocation on its face, is void as against creditors ;—*Roberts on Fraud. Conv.* 618, 620; 4 *Cruise's Dig.* 380, tit. *Deed*, ch. 22 § 40 ; a fortiori it is void where the power of revocation is not on the face of the deed, but is secretly reserved. Even if *Oxnard's* deed be free from actual fraud, yet it may be construed in connexion with the deed to *Burbank*, that the statute against frauds be not defeated. *Roberts on Fraud Conv.* 379, 381, note g. *Burrell's case* 6 *Co.* 726.

And if none but prior creditors can impeach the conveyance, the demandant has that character. He was retained in a suit

previously commenced, and was bound to proceed in it to judgment. The contract was already executed in part, and he was obliged to complete it. *Dearborn v. Dearborn* 15 *Mass.* 316. It was enough that there was a contract made; though the services were not rendered which were to form the basis of the claim to compensation ; for it was in respect of the debtor's existing means to pay, that the credit was given, and the stipulation entered into ; and not in respect of such means as he might from time to time possess, during the progress of the business. *How v. Ward, ante p.* 195. *Damon v. Bryant* 2 *Pick.* 411. *Hind's lessee v. Longworth* 11 *Wheat.* 199.

But if the demandant is merely a subsequent creditor, yet the deed to the *Oxnards* is at best but a voluntary conveyance ; and all such, except family settlements, if made by a person indebted at the time, or with a view to future indebtedness, are void against subsequent creditors. *Sexton v. Wheaton* 8 *Wheat.* 242, 250. *Reade v. Livingston* 3 *Johns. Chan.* 501. *Roberts on Fraud. Conv.* 17, 18, 19, 29. They are also void against subsequent purchasers for valuable consideration; and by our law the extent of an execution is a statute purchase of the debtor's title ; and it gives the creditor a seisin, which he may assert, in any shape, against a wrong doer.

Though the *Oxnards'* deed were good ; yet the case is no better than if they had conveyed to *Aaron Woodman,* and he, at the same instant to *Burbank.* This latter deed, being clearly fraudulent, cannot be the foundation of title against any person whom it was designed to defraud. *Brooks v. Marbury* 11 *Wheat.* 90. *Roberts on Fraud. Conv.* 66, 451, *note a.* It is not necessary that he who sells the land should make the fraudulent estate ; if the estate be fraudulent, whoever sells it, it may be avoided. *Roberts on Fraud. Conv.* 377, 382. *Goodwin v. Hubbard* 15 *Mass.* 210. 4 *Dane's Abr.* 119. *Croft v. Arthur* 3 *Desauss.* 23. The estate never passed out of *Aaron Woodman,* so as to defeat his creditors ; but there always remained a resulting trust to him ; which may be shewn by parol. *Jackson v. Sternberg* 1 *Johns. Ca.* 153. And *Oxnard's* deed to *Burbank* can be regarded in no other light, than a renunciation and abandonment by the grantors

of all their estate in the premises, for the benefit of *Woodman's* creditors.

*J. Holmes* and *Goodenow*, for the tenant, denied that the demandant was a prior creditor of *Aaron Woodman*; he being under no obligation, as they contended, to prosecute the suit, but at his own pleasure ; or, at most, no farther than he was furnished with funds. The obligation of the attorney is commensurate with that of the client ; and nothing more. And the debt of the demandant consisting of subsequent as well as prior charges, the whole partakes of the character of a subsequent debt.

But the intent of the debtor was not to defraud, but to secure his creditors. The purpose of the *Oxnards* was lawful ; and no fraudulent designs of *Woodman* could impair their security, without their actual participation. *Bridge v. Eggleston* 14 *Mass.* 245. *Harris v. The Trustees of Phillips Academy* 12 *Mass.* 456. Having enough left to pay his debts, he had a legal right to dispose of this estate at his own will ; even by voluntary conveyance ; which the demandant had no right to question. *Drinkwater v. Drinkwater* 4 *Mass.* 451. *Bennett v. Bedford Bank* 11 *Mass.* 421. *Parker v. Procter* 9 *Mass.* 390. 2 *Starkie's Ev.* 616. *Cadogan v. Kennett Cowp.* 432. *Dewey v. Boynton* 6 *East.* 257.

Here was no constructive fraud. The conveyance to the *Oxnards* was, in its operation, an extinguishment of their debt ; and had they afterwards sued *Woodman* for the debt, he might have shewn this conveyance in bar of the action. The estate was absolute in them. And it never passed back to *Woodman*, by any of the methods known to our law. It therefore could not pass to the demandant, who succeeded only to the rights of his debtor ; and whatever may be the character of the subsequent conveyances *in foro conscientiœ, in foro legis* they are valid.

The opinion of the court was read at the ensuing *September* term in this county, as drawn up by

WESTON J. The greater part of the debt, which was the foundation of the judgment rendered in favor of the demandant, accrued subsequent to the deed given by *Aaron Woodman* to the

*Oxnards.* The levy was entire, and cannot be so apportioned or divided as to constitute a satisfaction for that part of his debt, which was due prior to that deed. The demandant, having taken judgment for his whole demand, is to be regarded as a creditor subsequent to the conveyance of the land in question, by his debtor. He cannot therefore impeach that conveyance, but by showing actual fraud. This the jury have negatived ; although by the conduct of *Aaron Woodman* and of the *Oxnards,* who lent themselves as his instruments in his attempt subsequently to put the property out of the reach of his creditors, there was some reason to infer that this course was originally meditated by him, and intended to be aided by them, to defeat the claims of such as then were, or afterwards might be, his creditors ; and if the jury had been satisfied that such was their intention, the deed might have been defeated. But this does not clearly appear. The security of the *Oxnards* might have been the only ground of the conveyance at the time, and the fraudulent purpose conceived afterwards. And this is rendered the more probable from the fact, which the jury have found under the direction of the judge, that at the time of the conveyance, *Woodman* was possessed of property sufficient to pay his debts. It does not appear that the value of the land did much, if at all, exceed the amount due to the *Oxnards* ; so that fraud was not to be inferred from inadequacy of consideration. Although, by the agreement of the parties, the conveyance, which was in form absolute, was regarded as collateral security for their debts, which were not therefore discharged ; yet if they took the land, and held it to their own use, if of sufficient value, the debts, which it was conveyed to secure, would be considered as paid ; as when a mortgagee takes possession for condition broken, he can no longer recover the debt, except so far as the value of the property mortgaged may fall short of the debt due. We are of opinion that the judge was correct, in declining to instruct the jury, as requested by the counsel for the demandant, that the verbal agreement between *Woodman* and the *Oxnards,* when they received their deed, by which the former was to have the privilege of redeeming the land, by otherwise paying their demands, was conclusive evidence of fraud.

The case of *Goodwin v. Hubbard* 15 *Mass.* 210, has been cited for the demandant. We have examined it with attention. Some of the principles there stated, and deductions drawn by the learned chief justice, by whom the judgment of the court was delivered, do not appear to us to have been illustrated with the clearness, which generally marks his opinions. The facts presented a case of gross fraud upon creditors ; and could not fail to excite the desire, manifested by the court, to defeat the accomplishment of the designs of the fraudulent party. The case is viewed in various aspects ; and several suggestions are made as to the ground upon which this might be done without violating legal principles, the correctness of some of which, if we have understood them, may, we think, admit of doubt. Some special legislation upon this subject has, it appears, been deemed necessary in New-York. A statute of that State is referred to in the opinion cited, which provides that whenever real estate is held in trust, it may be levied upon by a creditor as the property of the *cestui que trust* ; and that parol evidence of such trust should, in such cases, be admissible. This latter provision seems to have been introduced, with a view to give additional facilities to creditors, in defeating the fraudulent arrangements of their debtors. It may, however, well deserve consideration whether, by thus relaxing the spirit and policy of the statute of frauds, more frauds may not be occasioned than defeated.

The ground, upon which the opinion of the court is distinctly predicated in that case, at the close, is, that the demandant, having shewn no title but what originated in fraud, could not prevail. We are called upon to determine, not whether the tenant who holds, as it is insisted, under a fraudulent conveyance, has title, but whether the demandant has ; and however defective may be that of the tenant, yet if the demandant has shewn no title, he must fail in his action. With every desire to aid the latter in defeating the fraudulent practices of his debtor, we find ourselves constrained to determine, that having failed to satisfy the jury that the conveyance to the *Oxnards* was fraudulent, he has exhibited no title which can avail him.

The opinion of the court is that the case was presented to the jury, by the judge who presided at the trial, as favorably as the facts would warrant. There must therefore be

*Judgment on the verdict.*