Usher *v.* Hazeltine.

USHER *vs.* HAZELTINE.

Where a farmer made a conveyance of his farm to his son, in consideration of the son's bond to support him during his life, retaining in his own hands personal property to a greater amount than the debts he owed at the time; this conveyance was held good, there being no proof of actual fraud; although some of the personal property was exempt from attachment; and although after his decease, in consequence of the charges of administration, and of the sum allowed by the Judge of Probate to the widow, the estate proved insolvent.

If a creditor will blend in one suit debts accrued partly before and partly after a conveyance which he would impeach as fraudulent, and has one judgment for them all; he can come in only in the character of a subsequent creditor.

THIS was an action of trespass *quare clausum fregit*, in which both parties claimed title to the *locus in quo.*

At the trial, before *Parris J.* at the last *September* term, it appeared that *William Hazeltine,* father of the defendant, induced him, in *August,* 1824, to return from *Calais* where he then resided, to *Buxton* in this county, and take a deed of his farm, giving back his own bond to support his father and mother during their lives, and to pay out certain sums to the daughters, he being the only son. This deed and arrangement were made upon deliberation, and advice with their relatives and friends; and without actual fraud. It was testified that the father was an honest man, and not then involved in debt. After the decease of the father, in *November,* 1824, his widow deserted the contract in the bond, and took her dower in the estate; the son, however proceeded to pay out, in that and the three following years, divers sums to his sisters, as stipulated in the bond. The deed was recorded in *February,* 1825, and the farm actually occupied by the defendant, ever after the conveyance.

The personal estate was inventoried at $427,46; besides which there was other property, to the value of upwards of 80 dollars, not

inventoried; in *June,* 1825, the Judge of Probate made an allowance of two hundred dollars to the widow, out of the personal estate;—she settled her third administration account *Jan.* 23, 1826; after which the estate was represented insolvent;—and at the close of the administration, the debts were found to amount to two hundred and thirteen dollars and some cents, and there remained a balance of personal estate, amounting to forty-one dollars and some cents, to be distributed among the creditors.

The plaintiff had a book account, consisting of various charges against the deceased, entered mostly before the conveyance of the farm to the son; but a small portion, amounting to $10,96, was entered afterwards; and the last item was charged after his decease. This account was sued against the administratrix;—judgment recovered at *February* term, 1827;—and the execution extended, in *August* following, on the *locus in quo,* which was part of the farm, as the estate of the deceased, not inventoried.

A verdict was returned for the defendant, subject to the opinion of the court upon the general question whether, upon this evidence, the action was maintainable.

*E. Shepley,* for the plaintiff, argued that the conveyance from the father to the son was voluntary in its character, and void against prior creditors. And such, he said, the plaintiff was, though some of the charges bore date after the deed; for it did not appear but that the debt was incurred long before; and the last item of charge, being made after the decease of the debtor, excludes the presumption that the goods were delivered on the days they were entered on the book. Herein this case differs from *Reed v. Woodman,* 4. *Greenl.* 400, which turns, as to this point, on the time when the debt was actually created.

The principle of law is, that one must not so diminish his estate by gratuities, as to prevent his creditor from obtaining his debt at law. Yet here the facts show that after deducting the property exempted by law from attachment, and allowing for the common and ordinary results in the settlement of estates, such satisfaction could not be had. The title, therefore, of the defendant ought to be postponed to that of

Usher *v.* Hazeltine.

the creditor. *Drinkwater v. Drinkwater*, 4 *Mass.* 354. *Doe v. Routledge, Cowp.* 705. *Partridge v. Gopp, Ambl.* 596.

*N. Emery*, for the defendant.

MELLEN C. J. delivered the opinion of the Court.

*William Hazeltine*, being seized of the premises in question, on the 9*th* of *August*, 1824, by his deed of that date, conveyed the same to the defendant, his son. The deed was recorded *February* 8, 1825. The plaintiff in *February* 1827, obtained judgment against the estate of *William Hazeltine* in the hands of his administrator. The execution issued on that judgment was duly extended upon the same premises in *August* 1827, and the return was seasonably recorded. The conveyance from the intestate *William Hazeltine* and the registry of it, being some years prior to the levy, if it was good and effectual to pass the estate to the defendant, there must be judgment on the verdict; otherwise there must be a new trial granted. The case finds, that *William Hazeltine* was an honest man, and, at the time of his conveyance to his son, was not involved in debt. There is no proof of any actual fraud in the conveyance, nor is it pretended that any such existed in respect to the transaction. But the counsel for the plaintiff has contended, that the conveyance was merely a voluntary one, made on a good, but not a valuable consideration, and therefore not valid as against prior creditors; and he has insisted that the plaintiff was a prior creditor. His argument is, that though there was no actual fraud, the peculiar circumstances of this case shew that on legal principles, the conveyance ought not to be sustained.

His first point is, that the plaintiff was a creditor at the time the deed was made. As to this, it appears that all his demands, on which he recovered his judgment against the estate of the intestate, except $10,96, were charged prior to the date of the deed; and that the items composing the sum of $10,96 were charged after its date. Now according to the decision of this court in the case of *Reed v. Woodman* 4. *Greenl.* 400, which is not impeached or doubted, the plaintiff, " having taken his judgment for his whole demand, is to be regarded as a creditor subsequent to the conveyance" of the premises in dis-

Usher *v.* Hazeltine.

pute. It is said, however, that though the items composing the $10,96, are charged after the date of the conveyance, there is no proof that the sums charged, became due after that time ; and that certainly the last item could not be, because charged after the death of the intestate ; but laying this out of the case, we may and ought to presume that the other charges were made at the time the debts became due, in the absence of all proof to the contrary. In this view, the plaintiff was not a creditor at the time of the conveyance.

His second point is, that a voluntary conveyance ought to be deemed void as against even subsequent creditors, if the grantor was insolvent at the time ; or at least, that such a circumstance is a badge of fraud, that may lead to that conclusion ; according to the third point settled in *How v. Ward* 4. *Greenl.* 195. One reply to this objection is, that the jury have found no fraud in this case ; and it is admitted that none influenced the parties to the conveyance in question. But, beyond this, can the position of the counsel be admitted, that a voluntary conveyance can be impeached by a subsequent creditor, though the grantor was entirely free from debt, if he was not possessed of property sufficient to pay the expenses of settling his estate also, after his death ? We are not prepared to sanction such a principle ; the consequences of its adoption would not only be extremely embarrassing, but in many instances would be productive of discord and confusion by the disturbance or destruction of family settlements made with the best of motives and by the best of men of independent fortunes. The most prudent and calculating man cannot foresee what misfortunes may overtake him, or how soon he may be reduced from opulence to poverty and ruin, without the least fault or imprudence on his part. It is for the public good, that parents should be permitted, when possessed of property that renders them able, to make advances to their children to assist them in their business or settlement in the world, and not to the prejudice of any of their creditors, without exposing the property thus conveyed to the danger of being wrested from them, whereby they may be subjected to greater trials and misfortunes than they probably ever would have suffered, if they had never received the bounty and assistance of their parents in the manner above mentioned. Besides, who can foresee how

much of his estate, in case of his death, may be absorbed in expenses of administration, or withdrawn from the control and enjoyment of his creditors, by those discretionary allowances which the Judge of Probate may decree to his widow out of the personal estate. But in addition to these arguments *ab inconvenienti* which we have stated, we would observe that the cases cited, do by no means sustain the principle assumed. In *Drinkwater v. Drinkwater*, the principal inquiry was, whether the defendant, as administrator, was entitled to contest the deed of the intestate on the ground of fraud ; and as there was no personal estate left more than sufficient to pay all his debts and the charges of administration properly incurred, and as the defendant had no lien on the real estate for the costs of that suit, judgment was rendered against him. That decision does not touch the point under consideration. So in the case of *Doe v Routledge*, the only points decided were, that to make a voluntary settlement void against a subsequent purchaser within the statute of 27. *Eliz.* it must be covinous and fraudulent, and not voluntary only ; and that he who would set it aside, must be a purchaser *bona fide,* and for valuable consideration. Lord *Mansfield's* expression, " there is no allegation that *William Watson*, the uncle, owed a farthing at the time, or left a single debt undischarged at his death," had no necessary connection with the point in judgment ; it was strong language used to show *Watson's* perfect solvency. Neither does the case from *Ambler* aid the plaintiff, so far as to maintain the objection we are considering. In the case before us, the inventory of the personal estate, as appraised, amounts to the sum of $427, 46, and the amount of debts was only $213 and some cents ; and had not the Judge of Probate, in his discretion, allowed the widow $200, there would have been more than sufficient personal estate to pay the debts of the deceased and the charges of administration ; and yet the language of Lord *Mansfield*, in the case in *Cowper*, goes no further than to the " debts he owed at the time of his decease."

On view of all the facts before us, and the authorities applicable to the case, our united opinion is, that the action cannot be maintained ; and there must be *Judgment on the verdict.*