## ANNIE E. CHAPMAN *v.* J. E. HUGHES.

1. GUARDIAN AND WARD. *Marriage of male ward. Act of November 26, 1821, construed.*

By the Act of November 26, 1821, providing for the delivery of the estate on the marriage of the ward, "to the ward or to the husband as the case may require," both male and female wards were meant. Since in view of the husband's marital rights at the time of the passage of the act, in no case could there have been a delivery of the estate to a female married ward.

2. INFANTS. *Marriage of male. Power to contract.*

Though by marriage a male infant is not emancipated from all the disabilities of infancy, nor enabled to contract generally as an adult might, yet the scope of his necessities is enlarged, and though the capacity to contract is still limited to the purchase of things necessary, what is included within these limits is increased.

3. SAME. *Necessaries.*

The necessaries for a single infant are those which pertain to him individually; those of a married infant are such as pertain to himself and family; and those of a married infant to whom the law has intrusted his estate are such as pertain to himself, his family, and his estate.

4. VOLUNTARY CONVEYANCE. *Prior and subsequent debts. Judgment embracing both.*

A creditor whose judgment is rendered upon a debt, part of which was contracted prior and part contracted subsequent to the date of a voluntary conveyance of the land which he seeks to subject to the payment of his debt, will not be treated as a subsequent creditor for the whole debt, and thus be made to lose a valid demand. *Edmunds* v. *Mister*, 58 Miss. 765, approved.

APPEAL from the Circuit Court of Grenada County.

HON. A. T. ROANE, Judge.

Robert H. Edmunds, a young man of large estate, was born on July 12, 1838, and became of age July 12, 1859. He was married on the 29th of October, 1857, before he obtained his majority, and his property was turned over to him by his guardian. During his minority he had contracted numerous debts, and on the 19th of March, 1860, without having theretofore done anything either in affirmance or disaffirmance of these debts, he executed and placed on record a deed whereby he conveyed to his daughter, then two months of age, the bulk of his property, real and personal, for the term of her natural life, leaving the reversion to himself. He declared at the time that he intended by the act to defeat the holders of claims contracted during his minority as to the estate conveyed.

After this conveyance Edmunds continued to become more and more involved, until his total indebtedness amounted to more than nine thousand dollars. Suits where eventually brought against

him by his various creditors, among whom were E. F. Moody, T. W. Snyder, and Frierson, Conway & Co., whose debts were contracted partly before and partly after the conveyance above mentioned. The suits ripened into judgments, no plea of minority having been interposed in any . of them. Under sales made by virtue of these judgments, defendants have held lands now sued for during many years. The appellant is the daughter of Edmunds, to whom he conveyed the life estate in the land and her grantees. They bring ejectment to recover the land and mense profits.

Many of the points presented in this case are similar to those raised in *Edmunds* v. *Mister*, 58 Miss. 765, except in that case the defendants failed to show that their judgments were legal demands against Edmunds, or such debts as were binding on an infant. In this case the proof shows that the debts were for necessaries.

*A. H. Whitfield*, for the appellants.

1. It will at once occur to the court that the testimony which the court below had in mind as showing that the Frierson, Conway & Co. judgment was based in part on necessaries, was wholly conjectural, and utterly insufficient testimony of Edmonds as to the custom of buying "two or three barrels of molasses, and some sugar," for the twenty-five or thirty hands he had. If this misty speculation could be dignified by the name of evidence, it would only show the purchase of " two or three barrels of molasses and some sugar" for the support of laborers engaged in the cultivation and improvement of his real estate, 1 Amer. L. C. 302, not necessaries, which are only those things strictly personal to the infant himself. *Decell* v. *Lewenthal*, 57 Miss. 334; *N. H. M. F. Co.* v. *Noyes*, 32 N. H. 350. But to inquire a little more particularly, what is the law as to what constitutes necessaries for a minor?

(1.) The court determines whether the articles named fall within the class of necessaries, as a matter of law; the jury, then, whether said articles were necessary in the given case for the given minor. *Decell* v. *Lewenthal*, 57 Miss. 334, adopting *Tupper* v. *Cald-*

*well*, 12 Metcalf 559 ; *Grace* v. *Hall*, 2 Humph. 27 ; and *Beeler* v. *Tony*, 1 Bibb 579 ; Ew. L. C. 64.

(2.) The wants that are necessary to any infant are those which are personal to him strictly. *Decell* v. *Lewenthal*, 57 Miss. 334 ; *Epperson* v. *Nugent*, 57 Miss. 47 ; *N. H. M. F. Co.* v. *Noyes*, 32 N. H. 350 ; 1 Am. L. C. 302, and note 6 ; *Richardson* v. *Strong*, 13 Iredell 106.

(3.) Where the father, guardian, or any person supplies the infant, he is not liable for necessaries ; and the burden of ascertaining whether he is so supplied and showing that he is not, is upon the creditor. *Edmunds* v. *Mister*, 58 Miss. 765 ; *Decell* v. *Lewenthal*, 57 Miss. 334 ; Ew. L. C. 56, 62, 63, and 64 ; Bingham on Infancy 86, n. 1, with authorities; *Rivers* v. *Gregg*, 5 Rich. Eq. 247. Credit presumed to be given to the guardian when the goods were sold by his direction. 1 Am. L. C. 803, n. 5 ; *Phelps* v. *Worcester*, 11 N. H. 51. As to what are necessaries, see Ew. L. C. 75. It is held as matter of law that cigars are not. Ew. L. C. 66 ; Benjamin on Sales (1st Am. ed.), § 24, n. g. "Use not ornament," "real not ostensible station," "substantial good, not mere pleasure," are the considerations. Ew. L. C. 68 ; Bingham on Infancy 86, n. 1 ; Instances Ew. L. C. 68–9. Law suits are not; presents are not ; nor a horse even for a farmer ; nor a farrier's bill ; nor saddlery bills ; nor liquors; fiddles, powder, nor pistols. *Beeler* v. *Young*, 1 Bibb 519 ; *Glover* v. *Ott*, 1. McCord 575 ; *McKanner* v. *Merry*, 61 Ill. 179. Nor money lent; nor lumber to build a dwelling. Ew. L. C. 70 ; *Freeman* v. *Bridges*, 4 Jones Law 1 ; *Tupper* v. *Caldwell*, 12 Metcalf 559. Nor amounts paid for insurance. *N. H. M. F. Co.* v. *Noyes*, 32 N. H. 350. Nor instruction in singing and dancing. Ew. L. C. 74 ; Tyler on Infancy, chap. 7. Nor, in any case, expenditures for improvements on infant's real estate. 1. Am. L. C. 302.

(4.) Where there is not more than a scintilla of proof, the court should take the case from the jury. Ew. L. C. 64, 67.

2. As to existing creditors, it is to be noted especially that a creditor who sues upon indebtedness contracted partly before and partly after the execution of the deed, and merges both characters of

indebtedness in one and the same judgment, is compelled to occupy the position of a subsequent creditor only—subsequent creditor as to all. This is well settled. *Usher* v. *Hazeltine,* 5 Greenleaf 571, in 17 Am. Dec. 254; *Reed* v. *Woodman,* the court saying it has "never been doubted." 4 Greenleaf 400; 1 Am. L. C. 46, and n. 5, where the learned editors, Messrs Hare and Wallace, state it as settled law. *Gilman* v. *Baker,* 52 Barb. (N. Y.) 26. U. S. Dig., first series, vol. 6, 679, 55, § 136, and specially *Miles* v. *Richards,* Walker 477. A judgment at law is an entirety. *Rule* v. *Broach,* October term, 1880. And the creditor acts in his own wrong when he merges debts under which his rights are altogether different, as respects the conveyance in one entire judgment, and he will not be permitted to take advantage of his own wrong. It is therefore clear that there existed against Edmunds only about five hundred and forty-one dollars at the date of the conveyance, five hundred and forty-one dollars of indebtedness against over thirty-six thousand dollars of property left open to creditors, aside from the reversionary interest in fifteen lots in the city of Grenada! Is it not too ludicrous for argument?

3. Here, then, assuredly, there can be no uncertainty; the intention was not to defeat adult debts, but illegal minority debts. The reversion was left out of the conveyance, was accessible to execution, was sold and bought by appellees, had a fixed and definite value, which is fully established by the proof. And we insist in these cases at least, will be taken into the estimate of the value of the property left out of the deed. Reversions are conveyed, mortgaged, bought and sold every day in the market. 2 Wash. Real Property 740.

4. And we specially call the court's attention on this point to the fact (Rec. 260) that appellees' grantors were owners of the Moody and Moore & Gibbs' judgments by purchase, and grantors in sheriff's deed were Wm. Lake's sons. This is of controlling importance, for where plaintiffs in judgments buy, irregularities avoid sale. Freeman on Ex., § 340: "Where property is sold under several executions, and only one is valid if sold to *plaintiffs in execution the sale is void.*" *Brown* v. *McKay,* 16 Ind. 484;

*Hutchins* v. *Due,* 3 Ind. 528; *Clark* v. *Watson,* 2 Ind. 400; *Harrison* v. *Sopp,* 8 Blackf. 455; *Dudley* v. *Cole,* 1 Dev. & B. Eq. 428; *Banks* v. *Evans,* 18 Miss. 35; cited in the able brief of Mr. Watson in *Duke* v. *Clark,* 58 Miss. 465, which case expressly and clearly, at p. 477, so announces the law. Now, whom were the lots here involved sold to? To *the Lakes, sons of Wm. Lake, a plaintiff in judgment, and M. K. Mister, himself a plaintiff in judgment!* The sale of the property here involved then falls precisely within *Duke* v. *Clark,* and the authoities above cited, and even on the unwarranted claim of appellees, that the lots were sold under the Moody & Snyder judgments, as recited in the sheriff's second deed, even supposing (for which we once more reiterate that there is not a scintilla of competent testimony) the Frierson, Conway & Co. judgment was valid for some trifling sum, the result would clearly and manifestly be that the sale was absolutely and wholly void, and appellees got no title whatever, by reason of selling at one and the same time, the same property in both, under (on above suppositions) four invalid and one valid judgment to the *judgment plaintiffs themselves!*

*A. H. Whitfield* also argued the case orally.

*R. H. Golladay,* for the appellees.

1. All of the proof that was in *Edmunds* v. *Mister,* 58 Miss., is in this case and much more. The requisites imposed on appellees by that case are confidently believed to be complied with.

2. The character of the conveyance of Edmunds to his child was ascertained and declared in *Edmunds* v. *Mister,* 58 Miss. 776. As to this point the proof is the same now as then.

3. After Edmunds' marriage in 1857, though still a minor, he was entitled to the custody and control of his property. He came in posession of a plantation and negroes. Some duties devolved on him, we apprehend, but what, it is not our purpose to define, only this far we go, as a husband, father, and the owner of human beings he might incur liabilities usual and necessary for the protection and preservation of his property.

*R. Horton,* on same side.

1. In establishing the indebtedness of R. H. Edmunds, which was

merged into judgments, and under which said lot in controversy was sold, appellees would not be held to a strict accountability, as to dates, etc., but these may be proven by and from circumstances. See 23 Miss. 367 and 368 ; 41 Miss. 79.

2. The judgments against R. H. Edmunds on a claim against him is *prima facie* a valid charge against him and his estate, the property in controversy, and to be maintained against him and this property as such, unless plaintiffs show that the cause of action was not a valid claim against Edmunds.　*Yandall* v. *Pugh*, 53 Miss. 295.　Annie E. Chapman gets her estate as a volunteer and the heirs in said case get theirs by descent, both got their property before judgment, hence there is no difference in principle.　See also Bump on Fraudulent Conveyance 557, *et seq.;* 60 Miss. 872; Freeman on Judgments, §§ 416, 418.

3. The necessaries for which an infant could bind himself were such as were suitable to his condition in life.　In the case of *Decell* v. *Lewenthal*, 57 Miss. 336.

4. Edmunds was lawfully married on the 29th day of October, 1857, and was entitled by statute—Code 57, 462, art. 148—to the control of his property, and the powers and duties of his guardian *ex virtute legis* ceased and were then determined and said Edmunds' disability of minority was diminished and he, to a large extent, was emancipated so as to be able to make a binding contract for the preservation of his estate.

5. When, upon the whole case, the conclusion of the circuit judge, sitting as a jury, is found to be right, this court will not disturb his judgment because he may have given a wrong or insufficient reason for his conclusion.　45 Miss. 189 ; 46 Miss. 346; 52 Miss. 458; 53 Miss. 201; Ib. 307 ; 55 Miss. 24; 53 Miss. 171; 54 Miss. 554; 53 Miss. 425; 56 Miss. 444 and 448.

*J. E. Gwin*, on the same side, argued orally and in writing.

1. Instead of these two cases being in all respects similar to that of *Annie H. Edmunds, by her next friend, etc.,* v. *M. K. Mister*, reported in 58 Miss. 765, the opinion of law and fact presented in this record are entirely different from those then presented.　Accepting the decision of this court in that case as undoubtedly correct,

defendants in this went into the real merits to show that the debts on which the judgments were rendered and under which the lands in controversy were sued were valid debts at the time Edmunds fraudulently executed the deed of gift to his daughter.

2. That so soon as R. H. Edmunds was married on October 29th, 1857, he was emancipated from his disabilities as a minor and could contract as an adult could by virtue of the act of 1857.

3. If mistaken as to the first proposition, I submit that after R. H. Edmunds was married he was liable for all debts contracted for supplies for himself, his family, servants, and to run his place and maintain and support and furnish his servants, mules and stock, and that he was the only person who could judge as to his needs. Code 1857, 462.

*A. H. Whitfield,* for the appellant, in reply.

The Code of 1857, art. 148, p. 462. This statute is copied into all the codes—Hutchinson's, Poindexter's, and in Howard & Hutchinson's Statutes. It was passed November 26, 1821. It has been construed, in 2 Howard 893, to apply to female wards. *Brick's Estate,* 15 Abbott's Pr. Rep. 14; Reeves on Domestic Relations 470–1, and note (1).

COOPER, J., delivered the opinion of the court.

Before the passage of the act of November 26, 1821, the power of a guardian over the estate of a male ward continued until such ward arrived at the age of majority notwithstanding his marriage. Schouler on Domestic Relations 425; Reeves on Domestic Relations 471; 2 Kent 226. But by the act of 1821 it was provided that "the powers and duties of every testamentary or other guardian over the person and estate of the ward shall cease and determine when such ward shall either arrive at the age of twenty-one years or be lawfully married, and in either event the guardian shall forthwith render a final account of his guardianship to the orphans' court, and shall deliver up, agreeably to the order of said court, to the said ward (or to the husband as the case may require) all the property of such ward in his hands."

At the time of the passage of this act, the husband in virtue of

his marital rights was the owner of the personal estate of his wife in the hands of her guardian, and the right to the possession thereof was in the husband alone, and not in the wife. It is therefore manifest that in providing for the delivery of the estate on the marriage of the ward, "to the ward, or to the husband as the case may require," both male and female wards were meant, since in no case could there have been a delivery of the estate to a female married ward. The act of 1821 was carried forward into the Codes of 1857 and 1871 in *totidem verbis*, and its substance is in the Code of 1880.

By reason of this statute, R. H. Edmunds, on his marriage though still an infant, became entitled to the possession of his estate, and it is shown by the proceedings in the probate court that on his petition possession was awarded to him.

Being thus invested by law with the custody, management, and control of his estate, his capacity to contract was by necessary implication extended to the necessities of his condition. He was not emancipated from all the disabilities of infancy, nor did he become enabled to contract generally, as an adult might, but the scope of his necessities was enlarged, and though his capacity to contract was still limited to the purchase of things necessary, what was included within these limits was increased as his condition changed. The necessaries for a single infant are those which pertain to him individually; those of a married infant are such as pertain to himself and his family, and those of a married infant to whom the law has intrusted his estate are such as pertain to himself, his family, and his estate; the control of the estate created in its owner the capacity to make such contracts as were necessary to secure its preservation and beneficial enjoyment.

Included in this extension of capacity it may be confidently stated was the power to purchase family and plantation supplies, and from the testimony of Mr. Edmunds himself, who was introduced as a witness for the plaintiffs, it appears with reasonable certainty that the note sued on in the case of Frierson, Conway & Co. was executed in settlement of an account for plantation and family supplies which had been made in the year 1859. It is true

the witness says that he cannot recollect the items of the account, and after the lapse of so many years his testimony would scarcely be credible if he pretended to remember them, but he does state generally that Frierson, Conway & Co. were his merchants in New Orleans, that he had no other merchants there, that he bought from them family and plantation supplies, and he thinks the note was given in payment of the account up to January 1, 1860. This, we think, in the absence of any evidence, that the account was for any other time or for any other articles, sufficiently establishes the fact that this note was executed in settlement of an account which Mr. Edmunds had capacity to make, and for the payment of which he was bound, notwithstanding his infancy.

It is said, however, that the sale was made of the property in controversy under several executions against Edmunds, some of which did not bind the interest of Mrs. Chapman in the land; that one Mister, who was one of the joint purchasers of the land, was also owner of one of these judgments, and that, being such plaintiff, he and his co-purchasers took no title by reason of the sale under judgments, one of which gave no power to the sheriff to sell the interest of Mrs. Chapman. In support of this view reliance is placed on the case of *Duke* v. *Clark*, 58 Miss. 465. The cases are clearly distinguishable. In the case of *Duke* v. *Clark*, one of the judgments gave no right to go against any interest in the land sold. In the case now before us all the judgments bound the reversionary interest of Edmunds in the lands sold. In *Duke* v. *Clark*, the purchaser was the owner of all the judgments levied and could control action under them. In this case Mister was the owner of only one judgment, and neither he nor any of his co-purchasers had any sort of interest in or control over the judgment in favor of Frierson, Conway & Co.

It appears from the record that the judgments in favor of Noles and Moody & Snyder, aggregating in amount seven hundred and ninety-one dollars and ninety cents, exclusive of interest and costs of court, had been entered against R. H. Edmunds before the judgment in favor of Frierson, Conway & Co., and had a prior right of satisfaction out of the estate of Edmunds. The plantation was sold

under execution, and brought the sum of three thousand five hundred and fifty dollars. The testimony of the witnesses for plaintiff show that the reversionary interest of Edmunds was worth one-half or two-thirds of the whole property. In this the appellant had no sort of interest. If the valuation of Edmunds' interest in this property be fixed at one-half, the sum realized at the sale of his interest in the plantation was one thousand seven hundred and seventy-five dollars; if it be fixed at two-thirds, the sum realized was two thousand three hundred and seventy dollars. Deducting from these sums the amount of the prior judgments which bound the interest of Edmunds, and there remained either the sum of nine hundred and eighty-three dollars or one thousand five hundred and seventy-eight dollars which was appropriable to the Frierson, Conway & Co. judgment, and this appropriation being made there remained due on it (if the amount of the note alone sued on in that case be considered) more than the sum at which the town lots were sold.

But it is urged by counsel for appellant that each of these judgments was rendered upon debts, some of which were in existence at the date of the conveyance to Mrs. Chapman, and some of which were contracted subsequently to that time, and that the plaintiffs by taking one judgment for both classes of debts thereby became subsequent creditors for all the debt. This view of the law is sustained by the case of *Baker* v. *Gilman,* 52 Barb. 26, and by the Supreme Courts of Maine and Illinois : *Reed* v. *Woodman,* 4 Me. 400; *Usher* v. *Hazeltine,* 5 Me. 471; *Miller* v. *Miller,* 23 Me. 22; *Quimly* v. *Dill,* 40 Me. 528; *Moritz* v. *Hoffman,* 35 Ill. 553.

The decisions are based upon the doctrine of entirety of judgments, which these courts say cannot be apportioned. We declined to take this view of the law in *Edmunds* v. *Mister,* 58 Miss. 765, and are satisfied with the correctness of our opinion. Under the rule announced in these cases it would be easy to conceive of circumstances under which a creditor might be either compelled to forego a part of his claim against a fraudulent debtor or relinquish all pursuit of the property fraudulently conveyed. Suppose that Frierson, Conway & Co. had been the merchants of R. H.

Edmunds in the year 1860, and prior to March 19, had made sales of goods to him to the amount of one thousand dollars. On that day the debtor made the conveyance to his daughter. Now if Frierson, Conway & Co. had, after that date, sold him other goods in the year 1860, to the further amount of one thousand dollars, how would they have reached the property conveyed? They could not have split their demand and brought two suits, for this would have unnecessarily harassed the debtor. If two suits had been brought on two independent contracts, the court, on motion, would have ordered them to be consolidated, and without the consent of the creditors there would have been one judgment for both debts. Now to hold that the plaintiffs must sue the defendant on his whole claim, because of the rights of the debtor, and then to say that if he does he cannot go against property fraudulently conveyed because of the right of the fraudulent grantee, seems to us the height of injustice. Where one of two innocent parties must suffer, it is sometimes difficult to say where the burden ought to fall, but where an innocent creditor or a fraudulent purchaser must lose, it is not difficult to determine at least where the loss ought to be put. We have now a case in which the debtor, believing the debts due by him not to be binding because contracted by him during minority, made a conveyance to his infant child to prevent the property being taken by the creditor. We think the debt due was valid and obligatory, and this being true, the conveyance was as nothing. As to the debt which was due at the time of the conveyance, the creditor might proceed just as if the conveyance had never been made. It is the debt, and not the judgment, which avoids the deed. If Mrs. Chapman, the donee of the land, had desired to protect it against the claim, she should have offered to pay so much of the claims as the creditors were entitled to collect by sale of the land. The land has brought less than the amount the judgment creditors were entitled to collect on the debts existing at the time of the conveyance, and we decline to extend the operation of a technical rule, so as to wrest from them the fruits of their proceedings. What would be the result if the creditor, having realized by sale of property conveyed all that he was entitled to collect out of it, should

sell for the balance of a judgment which he was not authorized to fix on the property, we do not find it necessary now to decide.

At the time of the sale Mr. Edmunds did not live south of the Yallobusha River, and the sale was rightly made at Coffeeville.

These views make it unnecessary to examine the many objections interposed to the competency of the testimony, since whether the evidence was competent or not, the right result has been reached.

*Judgment affirmed.*